[Cite as *State v. Young*, 2014-Ohio-1055.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
### No. 99752

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GEORGE YOUNG

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-566461

**BEFORE:** S. Gallagher, J., Boyle, A.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** March 20, 2014

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue East
Cleveland, Ohio    44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Milko Cecez
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

{¶1} Appellant George Young appeals his conviction, following a jury trial, on three counts of felonious assault and one count of improperly discharging a firearm into a habitation, all with attendant firearm specifications. For the following reasons, we affirm Young's conviction.

{¶2} In August 2012, Young shot three people at a party held by one of the victims at her home. There were nine adults and fifteen children at the party. All three victims and two other adults knew Young because of a previous relationship he had with the fiancée of one of the victims. Young, unannounced, drove by the victims' party and parked in the driveway. Young was on friendly terms with the individuals even after discontinuing his romantic relationship with the victim's fiancée, who was present that night. After a brief discussion led to a disagreement, Young pulled a handgun and shot toward a group of party attendees standing in front of the house. Three people were seriously injured, one being paralyzed. At least five witnesses, including the three victims, positively identified Young as the driver and the shooter.

{¶3} Young testified at trial. Young claimed that he was out with his coworker for the evening and the coworker was driving Young's car. He explained that when his coworker parked at the home, he inexplicably pulled a gun and began shooting in the air after one of the victims drunkenly approached the driver's side of the vehicle in a menacing manner. It was only later that, according to Young, he found out that the

coworker actually shot at the home and hit three of Young's friends. Young admitted he never contacted any of the victims or the police after the shooting even though he claimed to be friends with the family. Young also claimed that he never told the investigating police officers about his coworker's involvement because his attorney told Young to remain silent until the attorney was present. Young made several statements to the investigating officers.

{¶4} The state, at trial, called an investigating detective as a rebuttal witness. The detective explained that Young never mentioned the acts of the coworker when Young was questioned about the night of the shooting. The detective also stated that Young received his *Miranda* rights, but elected to proceed with the questioning without an attorney present, with Young in part claiming he went to his girlfriend's house around the time of the shooting. Young attempted to testify in surrebuttal, but the court prohibited him. Young proffered that he was never read his *Miranda* rights and never said he was at his girlfriend's house during the shooting, just after.

{¶5} The state indicted Young on seven counts, two counts of felonious assault for each victim and one count of discharging a firearm into a habitation. All seven counts had one- and three-year firearm specifications and a five-year drive-by shooting specification attached. The jury found Young guilty on all counts and specifications. The trial court merged the felonious assault counts into one count for each victim and the one- and three-year firearm specifications at sentencing into the three-year specification, but ran the three felonious assault counts consecutive with the three- and five-year firearm

and drive-by shooting specifications. The discharging a firearm into a habitation count was run concurrent to the felonious assault sentences. Young is serving a 32-year aggregate sentence. It is from this conviction that Young timely appeals, raising nine assignments of error, none of which have merit.

{¶6} In his first and second assignments of error, Young claims the jury's guilty verdict is not supported by the sufficiency or manifest weight of the evidence. Young's arguments are largely conclusory and, therefore, without merit.

{¶7} When an appellate court reviews a claim of insufficient evidence, "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶8} To the contrary, when reviewing a claim challenging the manifest weight of the evidence, the court, after reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

Moreover, a claim that a jury verdict is against the manifest weight of the evidence involves a separate and distinct test that is much broader than the test for sufficiency. *State v. Drummond*, 111 Ohio St.3d 4, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193. Therefore, they should be addressed separately when raised on appeal.

{¶9} The totality of Young's arguments in support of his first and second assignments of error is that he testified that his coworker was the perpetrator of the crimes, so all other evidence must be disregarded and, in the alternative, that there is no evidence establishing Young's intent to cause the injuries. Neither of those arguments has merit.[1]

{¶10} Young claims the state failed to produce any evidence demonstrating that he knowingly caused the injuries to the victims. In considering the evidence in a light most favorable to the state, as we must, it is evident the state presented ample evidence of the requisite mens rea. The state presented several witnesses, establishing that Young pulled a handgun from a concealed location and shot several people.

{¶11} Pursuant to R.C. 2901.22(B), "a person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." *State v. Perez*, 8th Dist. Cuyahoga No. 91227,

---

[1] It appears Young transposed his sufficiency argument with the manifest weight one. In the former, he claims his testimony should supplant every other eyewitness's version of the events, an argument more appropriately addressing the manifest weight of the evidence. His manifest weight argument addressed whether the state presented any evidence of intent to harm the victims, an argument more appropriately addressed through a claim of insufficiency of the evidence. In the abundance of caution, we presume this was unintended and will address the arguments under the appropriate standard of review rather than dismissing both assignments of error as without merit as argued.

2009-Ohio-959, ¶ 42. "It is common knowledge that a firearm is an inherently dangerous instrumentality, use of which is reasonably likely to produce serious injury or death." *Id.,* citing *State v. Widner*, 69 Ohio St.2d 267, 270, 431 N.E.2d 1025 (1982). "Courts have consistently held that shooting a gun in a place where there is risk of injury to one or more persons supports the inference that the offender acted knowingly." *Id.* The state, therefore, met its burden beyond a reasonable doubt that Young intended to harm the victims when he fired his handgun in their direction.

{¶12} Further, Young provided no basis for his claim that the jury clearly lost its way in finding him guilty of shooting the three victims and of discharging a firearm at a habitation, other than summarily claiming that his testimony should have been given greater weight than any of the other eyewitnesses, which included the three victims. Young completely ignores the five witnesses that identified him as the shooter and cites no reason to discount their version of events in favor of his own. Further, the victims' and other eyewitnesses' testimony was corroborated by a neighbor who witnessed Young's quick departure and by several detectives who were never told of the coworker's involvement during the investigation.

{¶13} After independently reviewing the entire record and weighing the evidence and all reasonable inferences, including the credibility of the witnesses, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Young's first and second assignments of error are overruled.

{¶14} In Young's third assignment of error, he claims the trial court erred by prohibiting him from testifying in surrebuttal after the state presented the detective to rebut Young's testimony.

{¶15} A trial court's decision to deny a defendant the ability to present surrebuttal evidence is reviewed under an abuse of discretion standard. *State v. Spirko*, 59 Ohio St.3d 1, 28-29, 570 N.E.2d 229 (1991), citing *State v. Moore*, 47 Ohio App.2d 181, 188, 353 N.E.2d 866 (9th Dist.1973). A trial court does not, however, abuse its discretion in merely denying a criminal defendant the opportunity to present surrebuttal testimony. *Id.* A defendant must still prove the outcome of the trial would have been different if such evidence were presented. *Id.*[2]

{¶16} Young claims he would have testified in surrebuttal that (1) he was never read his *Miranda* rights; (2) he never said he was at his girlfriend's; and (3) that he was with his girlfriend after the incident only, in contradiction to the state's evidence presented on rebuttal. The detective testified that Young received his *Miranda* rights, decided to submit to questioning after hearing those rights, and never mentioned his coworker's involvement in the shooting. Young never argues how the preclusion of his proffered testimony would have altered the outcome. In fact, Young continuously maintained in his testimony that his attorney advised him to remain silent prior to the detective's questioning

---

[2] Young claims that the trial court's decision to prohibit him from presenting surrebuttal evidence violated his Sixth Amendment right to confront his accusers. Young's claim is misplaced. Young had the opportunity to cross-examine the testifying detective. He had every opportunity to face his accuser.

Young, so any lack of a *Miranda* warning is harmless in this regard, other than to impugn the detective. Young testified to understanding his rights, even claiming to have exercised those rights; and there is no clear explanation how the *Miranda* warnings, or lack thereof, affected the jury's determination of guilt. Further, Young's testimony in his case-in-chief established that he only visited his girlfriend after the shooting took place. The evidence was therefore part of the record. In short, either the evidence was already introduced or rendered irrelevant based upon Young's testimony. His third assignment of error is overruled.

{¶17} In his fourth assignment of error, Young argues that the trial court erred by giving improper jury instructions, specifically by giving the flight-of-the-defendant instruction even though Young testified at trial.

{¶18} A trial court is provided the discretion to determine whether the evidence adduced at trial was sufficient to require an instruction. *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 72. Jury instructions must be viewed as a whole to determine whether they contain prejudicial error. *State v. Fields*, 13 Ohio App.3d 433, 436, 469 N.E.2d 939 (8th Dist.1984).

{¶19} Young argues that the trial court erred in giving a flight instruction when the defendant testified at trial. Young failed to support his argument with citation to the relevant authority. App.R. 16(A)(7). Further, a "trial court [does] not abuse its discretion in giving a flight instruction where the evidence established that defendant departed the scene, was sought for questioning about the crime, and could not be located."

*State v. Santiago*, 8th Dist. Cuyahoga No. 95516, 2011-Ohio-3058, ¶ 34. The evidence established, in this case, that immediately after the shooting, Young fled the scene quickly and could not be located by the police for some time after the shooting. Young's fourth assignment of error is overruled.

**{¶20}** In his fifth assignment of error, Young claims he was denied the effective assistance of counsel because his trial attorney did not give an opening statement at trial.

**{¶21}** In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). The defendant has the burden of proving his counsel rendered ineffective assistance. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 223.

**{¶22}** Young's argument focuses solely on the first prong of the *Strickland* test, whether his counsel was deficient for failing to give an opening statement at trial. The Ohio Supreme Court, however, held that a lawyer's omission in providing an opening statement must be viewed as a tactical decision and does not, in and of itself, rise to the level of ineffective assistance. *State v. Bradley*, 42 Ohio St.3d 136, 144, 538 N.E.2d 373

(1989). Young has not provided any explanation to overcome this presumption that the omission of an opening statement rendered his lawyer's assistance ineffective. Nevertheless, Young failed to even address the second *Strickland* prong regarding prejudice. Accordingly, Young's fifth assignment of error must be overruled.

{¶23} In Young's sixth and seventh assignments of error, he claims the trial court erred by imposing consecutive sentences for the separate firearm specifications under the mistaken belief that the three- and five-year firearm specifications were consecutive by statute and that the trial court erred by imposing consecutive sentences on all counts. We find no merit to Young's argument.

{¶24} Young's argument is generally without merit because, as he conceded, the trial court made the appropriate findings before imposing consecutive sentences in general, and Young does not challenge whether the underlying facts support the trial court's findings. *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 10 (an appellate court may only overturn the imposition of consecutive sentences if (1) upon its review, the court clearly and convincingly finds that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4), or (2) the sentence is otherwise contrary to law).

{¶25} Young was additionally sentenced to serve consecutive sentences for violations of R.C. 2941.145 and 2941.146, the three- and five-year firearm specifications. R.C. 2929.14(B)(1)(c) provides that if a trial court imposes an additional prison term on an offender pursuant to R.C. 2941.146 (drive-by shooting specification), the court must also impose the three-year prison term on an offender pursuant R.C. 2941.145 (using firearm to

facilitate the offense specification) "relative to the same offense, provided the criteria specified * * * for imposing an additional prison term are satisfied relative to the offender and the offense." *See also State v. Coffman*, 10th Dist. Franklin No. 09AP727, 2010-Ohio-1995, ¶ 11 ("if an offense is properly accompanied with a specification under R.C. 2941.146 and another under 2941.145, there is no merger of the specifications, and the court must impose a sentence for each"). And further, pursuant to R.C. 2929.14(C)(1)(a), the trial court was required to impose the sentences to each of those specifications to be served consecutively. *Id.*[3] The trial court was, therefore, required to impose the three- and five-year firearm sentences. Young's sixth and seventh assignments of error are overruled.

**{¶26}** In his eighth assignment of error, Young contends the trial court erred by sentencing him to the three counts of felonious assault because, even though each count pertained to a separate victim, the offenses are part of the same transaction, and therefore, are allied offenses subject to merger. We summarily find no merit to Young's argument.

---

[3] Young's reference to this court's decision in *State v. Parker*, 8th Dist. Cuyahoga No. 98272, 2013-Ohio-2898, as a basis for questioning the mandatory nature of imposing the three- and five-year terms of imprisonment consecutively is contrary to the *Parker* court's analysis. In *Parker*, this court specifically referenced the fact that the term of imprisonment on the three- and five-year specifications, pursuant to R.C. 2941.145 and 2941.146 respectively, were to be imposed consecutively pursuant to R.C. 2929.14(C)(1)(a). *Id.* at ¶ 12. It was the absence of that consecutive-specific language with regard to a combination of three- and seven-year specifications, pursuant to R.C. 2941.145 and R.C. 2941.1412, that led to this court's determination in *Parker* that the three- and seven-year specifications were not mandatory consecutive as it was for the three- and five-year specifications.

{¶27} Generally, multiple sentences, even if possibly considered a single act committed against multiple victims, are constitutionally permissible if the offense is defined in terms of conduct toward another. *State v. Black*, 8th Dist. Cuyahoga No. 99421, 2013-Ohio-4908, ¶ 22; *State v. Patterson*, 8th Dist. No. 98127, 2012-Ohio-5511, ¶ 35; *State v. Poole*, 8th Dist. Cuyahoga No. 94759, 2011-Ohio-716, ¶ 14; *State v. Dix*, 8th Dist. Cuyahoga No. 94791, 2011-Ohio-472, ¶ 22. Basically, separate victims of crimes defined in terms of the conduct toward the victim will always equal a separately punishable crime not subject to merger, and therefore, we need not address whether Young committed the acts against the victims with a separate animus.[4] Young has provided no basis for moving against the weight of this district's precedence in determining that perpetrating an assault crime against separate victims will lead to the separate assault offenses merging for purposes of sentencing. Young's eighth assignment of error is overruled.

{¶28} Finally, in his ninth assignment of error, Young claims the trial court erred by failing to notify him of the possible consequences for failing to pay court costs; namely, that the trial court could impose community service in lieu of unpaid court costs. Although technically at the time of sentencing, the court should have so notified Young,

---

[4] Also, this district has held that, "[s]eparate victims alone established a separate animus for each offense." *State v. Rogers*, 2013-Ohio-3235, 994 N.E.2d 499, ¶ 22. That case is pending before the Ohio Supreme Court. *State v. Rogers*, 136 Ohio St.3d 1508, 2013-Ohio-4657, 995 N.E.2d 1212.

the statute was amended, effective a day after Young's sentencing hearing, and we therefore find that any error was harmless.

{¶29} The issue of the trial court's omission in adequately notifying Young of the court's ability to impose community service if he fails to pay the imposed costs is complicated by a series of amendments to R.C. 2947.23 that occurred around the time of Young's trial and sentencing. Effective September 28, 2012, R.C. 2947.23 was amended to include subsection (A)(1)(b), which provided:

> The failure of a judge or magistrate to notify the defendant pursuant to division (A)(1)(a) of this section does not negate or limit the authority of the court to order the defendant to perform community service if the defendant fails to pay the judgment described in that division or to timely make payments toward that judgment under an approved payment plan.

Prior to that amendment, R.C. 2947.23 was silent as to the effect of failing to notify the defendant. In the face of such an error in the pre-September 2012 version, some courts reversed the imposition of court costs, and remanded for the purposes of specifically prohibiting the trial court's ability to impose community service as a mechanism to pay court costs. *See, e.g., State v. Raymond*, 8th Dist. Cuyahoga No. 99177, 2013-Ohio-3144; *State v. Veal*, 2d Dist. Montgomery No. 25253, 2013-Ohio-1577.

{¶30} Young was sentenced after the effective date of 2011 S.B. No. 337, which amended R.C. 2947.23 effective September 28, 2012. For any offender sentenced after that effective date, any omission in notifying that offender of the possibility of community service in lieu of costs did not preclude the court from ordering performance of community service. In these cases, courts simply remanded for the notification. *See,*

*e.g., State v. Ayers*, 8th Dist. Cuyahoga No. 98927, 2013-Ohio-2998; *State v. Richmond*, 8th Dist. Cuyahoga No. 98915, 2013-Ohio-2887.   Therefore, and as acknowledged by the state, the trial court erred by failing to inform Young of the consequences of unpaid court costs upon his release from jail.   The remedy in such a situation is a remand to properly notify the defendant.

{¶31} However, the legislature amended R.C. 2947.23 one more time, effective March 22, 2013, one day after Young's sentencing hearing.   In the current version of the statute, the court must only notify an offender of the possibility of community service in lieu of unpaid court costs if that offender is sentenced to community control sanction or other nonresidential sanction.   R.C. 2947.23(A)(1)(a).   It expressly excludes the notification requirement on an offender sentenced to term of imprisonment.   If we reversed the trial court's imposition of court costs, we would have to remand the case for a resentencing on the court costs, in which case the current version of R.C. 2947.23 would apply.   Paradoxically, our remand would be for the trial court to again impose the court costs without any notification because Young was sentenced to a term of imprisonment. In light of this futile act, we find that in this particular case, any error in failing to notify Young pursuant to the version of R.C. 2947.23 effective September 28, 2012, was harmless, and we overrule his ninth, and final, assignment of error.

{¶32} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
KENNETH A. ROCCO, J., CONCUR